And their last case for argument, In Re. LATAM Airlines. Hold on one moment. Whenever you're ready. Good morning, your honors, and may it please the court. Matthew McGill of Gibson Dunn and Crutcher for the TLA claim holders. For a pure money claim to be unimpaired under section 1124.1, and for the class thus to be denied the right to vote on the plan, the claim must be paid the interest that has accrued during the pendency of the bankruptcy. That is what the third circuit said in PPI Enterprises. But the bankruptcy court here confirmed a plan that paid our unimpaired claims zero post-petition interest, even as it fully reinstates the equity. That decision is unprecedented. It violates the bankruptcy code in two independent ways, and this court could not affirm without opening two circuit splits. First, the plan eliminates our contractual right to post-petition interest, contrary to the sixth circuit's decision in Monclova and the third circuit's decision in PPI Enterprises. This is clear from the text of section 1124. Why is it the plan as opposed to the code that eliminates the PPI? Because there's no provision of the code that eliminates the entitlement to post-petition interest here, Your Honor. The bankruptcy court pointed to section 502B2 of the code. That does not disallow post-petition interest as the sixth circuit in Monclova held. And in fact, if you look at all four court of appeals that have addressed this issue, the fifth circuit, the ninth circuit, the third circuit, and the sixth circuit, all of them award post-petition interest. None of them find that 502B2 prohibits post-petition interest. In cases where the debtor is insolvent? Monclova is an insolvent case. There's no indication in Monclova that the debtor is solvent. And in Monclova, what happened was there was a liquidation, and a buyer purchased the assets, and the proceeds were distributed to creditors. So there's no indication there that insolvency is necessary for the payment of post-petition interest. And I think it really goes to the rationale for unimpairment. What unimpairment does is it denies you the right to vote on the plan. It denies you the ability to gain the protections of Section 1129 of the Code. And as this Court pointed out in the Tadeo decision, that is because when you are unimpaired, you are getting everything that you would get outside of bankruptcy. And that is why, and because the consequences of unimpairment are so significant, that is why impairment is defined in the broadest possible terms. This is where I think the Bankruptcy Court really went astray in its interpretation of the text of the Code. The Bankruptcy Court, and I'm looking at the Special Appendix, page 195, it recites Section 1124.1 of the Bankruptcy Code. It correctly says that to be unimpaired, the plan has to leave unaltered our legal, equitable, and contractual rights. But then it says that section says nothing about the payment of interest. And that's a serious misreading of Section 1124.1. Section 1124.1, as Tadeo says, it defines impairment in the broadest possible terms. It covers the waterfront. It doesn't need to specifically reference the payment of interest for that contractual right to be implicated. And this is exactly what Monclova and PPI Industries recognizes. Can I just ask you, so one, I guess two things. One, is your view that the questions of the solvency of the debtor does not matter? And then my follow-up to that would be, below did you challenge, did you raise this potential of like, that you would be entitled to PPI even if the debtor were insolvent? Let me take the second question first, if that's all right, Judge. Yes, we did raise that. You can look at page 335 of the Joint Appendix where Bankruptcy Court Counsel says, we are entitled to post-petition interest whether the debtor is solvent or not. But I think it's clear from the face of the Bankruptcy Court's own decision that we address, that this was framed and addressed as alternative arguments. The Bankruptcy Court at page 195 again of the Special Appendix says, the TLA claim holders contend that the debtors have failed to show that we are unimpaired under Section 1124.1 because we are not paid post-petition interest. And then the Bankruptcy Court holds that because we are paid in full and because, as we think erroneously, the Bankruptcy Court held, the Bankruptcy Code disallows payment of post-petition interest under Section 502b.2, the claims are not impaired. Then the Bankruptcy Court says in the very next paragraph under the heading, whether the solvent debtor exception applies, it starts, still, comma. It's addressing our alternative argument that even if 502b.2 generally bars post-petition interest, then we still would be entitled to it under the solvent debtor exception. And this is the holding essentially of the Ninth Circuit in PG&E. The Ninth Circuit said that 502b.2 does eliminate the contractual right to post-petition interest, but not your equitable right to be paid ahead of the equity. Not your equitable right arising from the absolute priority rule to be made whole ahead of the equity. So we have two positions, Your Honor. Our frontline position is that we have a contractual right to post-petition interest that cannot be eliminated. That is by the plan, and that is the holding of Monclova. Monclova says that 502b, though it often regularly disallows payment of post-petition interest as part of the allowed claim, it still remains part of the claim for purposes of unimpairment. That's the Monclova decision. The Third Circuit draws the same conclusion from the repeal of Section 1124.3. Section 1124.3 used to permit exactly the result that the Bankruptcy Court affirmed here. It used to permit unimpairment by paying the full amount of the allowed claim. But that provision was repealed by Congress. And the Third Circuit drew from that the conclusion that Congress must have intended that for unimpairment to go forward under 1124.1, the claim must receive post-petition interest. Now, the debtors here say that that does not apply when the debtor is insolvent. That 1124.3 unimpairment kind of still persists when the debtor is insolvent. That makes no sense as a matter of textual construction, but it also does not make any sense as a policy matter. There is no policy rationale for disenfranchising only the creditors of insolvent debtors and to not disenfranchise those of solvent debtors. I mean, you could look at Monclova, right? What would be the policy rationale for disenfranchising the IRS in that case? Monclova relied on a bankruptcy court decision from Louisiana called Season's Apartment. What would be the policy rationale for disenfranchising the creditor in that case? The creditors in those cases were- That it is unimpaired, and I mean, what about those cases? Okay, so we think the Sixth Circuit has this right. But I acknowledge what you're saying, Judge Chin, that the Third Circuit and the Fifth Circuit embrace this concept of code impairment. Two points- Some Southern District of New York cases as well. Correct, Your Honor. So let's take this in part. The Third Circuit, while embracing the code impairment theory, also recognizes the Third Circuit and PPI Enterprises. The debtor there pays post-petition interest. The creditor receives post-petition interest because the Third Circuit recognizes that even though there is generally code impairment, under the repeal, because of the repeal of 1124.3, there simply could not, it could not be contemplated that the very method of unimpairment that Congress had repealed could be permitted. So that's the Third Circuit's decision. The Fifth Circuit decision also embraces code impairment, Your Honor. But there also the debtor is paying post-petition interest. The dispute is as to the rate. There is no circuit court that has said that unimpaired claims can be denied post-petition interest. None. Not the Fourth, not the Fifth, not the Third, not the Ninth, definitely not the Sixth. So we think that the code impairment theory can be reconciled with our position here in the same way that the Third Circuit did so, by recognizing that the repeal of Section 1124.3 demonstrates that 502b2 does not disallow post-petition interest in every circumstance. The other way you could get there is the way the Ninth Circuit got there in PG&E, and to say that even if the contractual right is taken away by 502b2, the equitable right to be paid in full ahead of the equity persists. And that is triggered here because this plan reinstates the equity in full. And it's our position that that triggers the solvent debtor exception. I see I'm over my allotted time. May I reserve the balance of my time for rebuttal? Yes. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I'm David Harrington of Cleary Gottlieb for the Debtor Appellee TLA and the other LATAM debtors. Please. There's a fundamental rule of bankruptcy law that frames all of the issues in this appeal and guides the outcome as to those issues. And that basic principle is, as a matter of federal bankruptcy law, post-petition interest is not owed for the period when a debtor is engaged in bankruptcy. The music stops. The debtor is given breathing room. Section 502b2 of the Bankruptcy Code codifies this rule against such unmatured interest, also referred to as post-petition interest. And this has always been a fundamental principle of bankruptcy law, going back to the earliest of cases, going back to England. As the Supreme Court made clear in Vanston, the treatment of post-petition interest is a matter of federal bankruptcy law. It's not a matter of contract or state law. As the Supreme Court explained in Vanston, lower courts had addressed the issue of whether the contract they would provide for interest would be enforceable under state law. The Supreme Court said that doesn't matter because we apply federal law to the question of whether interest is owed during the bankruptcy period. As the Court stated, when and under what circumstances federal courts will allow interest on claims against debtors' estates being administered by them has long been decided by federal law. And, next sentence, the general rule in bankruptcy and in equity receivership has been that interest on the debtor's obligations ceases to accrue at the beginning of proceedings. That's federal law, and, of course, we know it's federal law because it's in the statute, the Bankruptcy Code, Section 502B2. There is one exception to this federal rule, and that is the solvent debtor exception. A debtor must invoke the solvent debtor exception and demonstrate that a debtor is actually solvent. It actually has assets and funds to pay all of its debts and have a surplus left over. That is rare. It typically happens when either circumstances change or expectations change. In the Ultra Petroleum case, for example, it was a company involved in the oil industry, and the market drastically changed after the bankruptcy filing so that the debtor was awash in cash, was solvent. In the PG&E case, that PG&E was concerned about liability for wildfires. California passed a statute saying that liability will be excused, and, therefore, those debtors were the rare case where a debtor doesn't need the protection of bankruptcy. It has the funds to pay off all of its debts plus interest and have a surplus. That is not the case here. On the threshold issue of is this new solvency-free theory that the TLA claimholders wish to present on appeal, was it their claim below? Was it presented below? And the answer to that is no. There are several pages in the transcript where argument is made, and then the bankruptcy court addresses it in its decision. Yes, Your Honor. The bankruptcy court addressed the question of impairment under Section 1124 because the TLA claimholders sought to rest this on the impairment concept in order to shift the burden onto the debtors as to solvency. This is exactly what they say. The debtors have the burden and confirmation to prove by a preponderance of the evidence that TLA is insolvent. Given the binding precedent discussed above concerning the solvent debtor exception, proving that TLA is insolvent is the only way that the debtors can even try to defend their classification of TLA. What I'm asking is the fact that it was argued and that it was addressed, why doesn't that constitute pressing and passing on the claim? Because, Your Honor, let me answer that in two parts. Their claim was not to unimpair creditors of an insolvent debtor. PPI must be paid. Their claim, which they repeated three times in their objection, was... I agree with you 100% that that was their primary claim, but did they not make an alternative claim? Your Honor, they did not. They did not say... that would be a very dramatic assertion to make. Dramatic because it's contrary to the case law that post-position interest must be paid by an insolvent debtor or else you have to treat them impaired. And they didn't make it as a matter of the proceedings. That would have been a stunning, unmissable assertion. What about the Monclova case that they are relying on? Well, the Monclova case is an unpublished Sixth Circuit decision that is an IRS case. And what the Sixth Circuit said, this is the key language that the other side cites, is the question is the IRS has a statutory right to collect interest on taxes until they're paid. That's in the Internal Revenue Code. If I owe taxes, I have to pay interest on those taxes up until they're paid. That's statutory. And what the Monclova court says is while this unmatured right to interest payments is subject to disallowance under 11 U.S.C. Section 502B, in most cases, it remains part of both IRS claims. They were not... this is the most case side of that sentence. This is an ordinary unsecured creditor. Now, Your Honor, I think the way we know Monclova doesn't stand for that proposition. For one thing, they didn't cite Monclova below, again, because they weren't pursuing this theory below. But we know every appellate court that has addressed this issue of if you don't get post-petition interest, are you impaired, has said the answer is no. The ULTRA court, the Fifth Circuit in ULTRA, said there's a monolithic mountain of authority, including PPI Enterprises, which counsel for TLA says somehow supports them, rejecting this claim. The court in PG&E said it's joined, as our sibling circuits have held, an alteration of pre-bankruptcy rights that occurs by operation of the code does not result in impairment. If this circuit split that the other side proposes were true, they would have said, well, other than the Sixth Circuit in Monclova, every court has rejected the theory that the TLA claimholders are asserting here. That is not what they found, because Monclova does not stand for that proposition. It's an IRS case. Your Honor, the PG&E case well encapsulates the rules here. As the court explained, prior to the debtor's bankruptcy filing, plaintiffs who are unsecured creditors possessed a contractual right to interest on debts not paid. But this contractual right, as applied to post-petition debts, was superseded by the code, specifically by Section 502B2's prohibition on the inclusion of unmatured interest as part of a claim. As a result, the plaintiff's claims do not include any contractual right to post-petition interest. And that's when it then said, as our sibling circuits have held, this is not impairment, because impairment is when a plan gives creditors less than they are entitled to under federal bankruptcy law. When it's federal bankruptcy law that dictates the result, that is not impairment. And that is the result here. And that is the result that the TLA claimholders worked with below when they said to unimpair creditors of a solvent debtor, you must pay PPI. Your Honors, I'm happy to continue if you have any questions for me. I know I'm hitting the end of my time limit. Thank you. Thank you, Your Honor. Good afternoon. Eric Brunstad on behalf of the Official Committee of Unsecured Creditors. The point that I wanted to emphasize here is why it is that Vance and the Supreme Court's articulation of the relevant principles that I think resolve this case remains good law. First of all, as the District Court observed, the Supreme Court's decision in Vanston was codified in Section 502B2, which disallows unmatured interest. And also, Vanston states the proposition that whether a claimant is entitled to post-petition interest is a question of federal law. It is not a question of state law. Now, in their reply brief, opposing counsel says that aspect of Vanston is no longer good law, and I wanted to explain why that is completely wrong. This is a question of federal law. Unmatured interest is not allowed under Section 1124. One cannot get more than one is entitled to under the code, and the code says no to post-petition interest. And in several more recent cases than Vanston, which was decided in 1946, the Supreme Court has cited Vanston favorably, has explained it, has not overruled it because it has not been overruled. It's been codified. And for that, the most important case is the 2000 decision of the Supreme Court in Raleigh, where on page 20, the Court cites to Vanston. But more importantly, on page 24, the Supreme Court explains Vanston. The Supreme Court explains that Vanston wasn't about the allowance of a claim. It was about the distribution of the assets. Exactly so. On page 163 of the Supreme Court's decision in Vanston, it says exactly that. When we're talking about post-petition interest, we're talking about the distribution of the assets. Interest stops currently on the petition date. If you're going to get post-petition interest, it's because federal law has to say you get it, and federal law says you don't. That was codified in Section 502b2. That rule endures. What we're talking about here is a distribution from the assets of the estate. Are they going to get post-petition interest when other unsecured creditors are not going to be paid in full? First of all, we do not have a solvent debtor. Secondly, even if we did, the Vanston test is not satisfied. Taking money out of the debtor to give them another $150 million would be taking money out of the pockets of other creditors who are not going to be paid in full. That is the creditor versus creditor part of the analysis the Supreme Court articulated in Vanston. And also, in Travelers, Vanston was cited favorably. And again, in Travelers in 2007, the Supreme Court articulated normally we consider state law in determining a claim unless a federal interest intervenes. And, of course, we have a federal statute as a matter of federal law that says they do not get post-petition interest. So Counsel for the Debtor is absolutely correct. The rule is they don't get it. The Supreme Court has spoken on this. It's been codified. And there are two rules of construction that I think support our argument, actually three. One is in Cohen, which they cite in their brief and we cite in ours, that the Supreme Court has instructed is we will not interpret the code to fail to follow past bankruptcy practice unless Congress has clearly intended a change. The opposite here, Congress codified Vanston in Section 502. The second is Taggart. When Congress codifies a prior practice, all the prior understandings go with it. That would include the key understanding that it's federal law that decides this. And then the third is the principle we cite at the end of our brief, Howard Delivery, that whenever you're talking about a priority, giving one credit or a leg up on the other, we construe those narrowly, not expansively. And that's exactly what they want. They want something nobody else is getting. They're getting very generous treatment under this plan. This extra $150 million has to come from somewhere. It would come out of the constituents that I represent's pockets. That's not equitable and it's not allowed. Thank you very much. Thank you. Good afternoon, Your Honor. May it please the Court. of an insolvent debtor. I wholeheartedly agree with him, but I'll focus my remarks on an alternative basis for affirmance, namely the equities of the case, and in particular why the Ninth Circuit's holding in PG&E actually provides a roadmap for the denial of post-petition interest in this case, even if TLA is insolvent, which, of course, the bankruptcy court found that it was not. Citing to the principles of Vanston by way of Ron Payer in PG&E, the Ninth Circuit recognized that denial of post-petition interest in an insolvent debtor case might be appropriate where countervailing equities dictate against the award. In particular, the Ninth Circuit noted that, quote, where payment of contractual or default interest could impair the ability of other similarly situated creditors to be paid in full. That, respectively, is this case. As the bankruptcy court found in findings that the TLA claimants did not actually challenge in their opening brief on appeal, quote, providing the TLA claimholders with an additional recovery would reduce the recoveries to impaired creditors under the plan and disrupt the delicate balance set forth in it. Switching gears, I'd like to briefly address the notion that the reinstatement of TLA's equity is itself proof that that equity has value. We don't think that inference is fair. First, as the debtors have pointed out in their brief, the cases, Chapter 11 cases, frequently reinstate the equity of subsidiaries under Chapter 11 plans, and there's a reason for that. Often, as here, the retention of the corporate structure is a benefit to all parties, and in this case, in fact, we think that it's a principal benefit to TLA, not to LATAM parents. As the bankruptcy court found, TLA relies upon LATAM parent and other debtors for its fleet. The bankruptcy court also found that TLA would have a difficult time obtaining financing on its own, given its lack of access to collateral. So we think that it's just as plausible, if not more so, that the reinstatement of equity here was for the benefit of TLA, not for the benefit of LATAM parents, and because the TLA claimholders did not raise this particular argument below, there's nothing in the record that would dictate that their argument is correct. Your Honor, I see my time is up, so unless you have any questions, we would urge you to affirm the lower courts. Thank you. Thank you. Thank you, Your Honors. Some points in rebuttal. First, as to forfeiture, the issues raised in this appeal were clearly passed upon by the bankruptcy court. I would look at page 196 of the special appendix, where the bankruptcy court says that we are not impaired within the meaning of 1124.1, because in the bankruptcy court's view, we are impaired by 502B2 of the code. That's clear holding of the bankruptcy court, clearly passed upon. Second, they have no case, not one. None has been cited to you that allows for no payment of post-petition interest to unimpaired creditors. What about all the settled law, the Supreme Court's decision, 502? Isn't that pretty basic law? Isn't it a basic bankruptcy principle, the music stops? The federal law theory of Vanston is not good law anymore. Butner abrogates that. And if it were codified in the manner that my friend suggests, no one could ever get post-petition interest. But four different courts of appeals have ruled that post-petition interest can be awarded. So it's not reconcilable with that theory, nor can it be, nor can Monclova be written off as an IRS case. If 502B2 did what the debtors say, then the IRS could not have won, because its contractual, its legal right would have been overcome by 502B2's prohibition of post-petition interest. With respect to PG&E, we have also, as PG&E held, in addition to the contractual right to post-petition interest, there is an equitable right to recover ahead of the equity. We think that it is clearly triggered by the recovery of equity. Why? Because the so-called solvent debtor doctrine is an outgrowth of the absolute priority rule. It is an application of the absolute priority rule, which provides that creditors must be made whole before any value can go to equity. Consolidated Rock, the Supreme Court's decision, says that absolute priority rule applies whether the debtor is solvent or insolvent. So per force, the same is true here. The method of determining solvency here, the bankruptcy court's methodology for determining solvency, makes no sense in the context of a going concern. TLA is one of Brazil's two largest airlines. It's immensely valuable, which is why the creditors of the LATAM parent are rushing to invest into it. What the Supreme Court's decisions in Consolidated Rock and Rash stand for is the proposition that when you have a going concern, you have to value it as a going concern. My final point is that we could have been denied post-petition interest here. The plan could provide for that. All that needs to happen, though, is that we would have to be deemed impaired and given an opportunity to vote on the plan and given the substantive protections of Section 1129. They have no answer at all to the repeal of Section 1124.3. They want to achieve here the same result that used to be permitted under 1124.3, but that Congress repealed. They would resurrect that provision and the policy problems it created. Thank you. Thank you. And thank you to all counsel. So that concludes the cases on our argument calendar. We have two cases on submission, Kirk v. Citigroup and RDW Capital v. Manessi. We'll take, obviously, those under advisement as well. So that concludes for today. Thank you for everyone, and thank you to the court staff for helping us keep things moving. And with that, I think we're ready to adjourn.